UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO. 7:03-CV-278-KKC

JOSEPH DAVID ADKINS, et al.                                         PLAINTIFFS

v.         **MEMORANDUM OPINION AND ORDER**

AMERICAN STANDARD, INC.                                              DEFENDANT

\* \* \* \* \* \* \* \* \*

This matter is before the Court on the Motion for Preliminary Injunction of the Plaintiffs (Rec. No. 23). For the following reasons, the Court will DENY the motion.

**I.     FACTS.**

The Plaintiffs are former employees of American Standard, Inc.'s plant in Paintsville, Kentucky who took disability retirement at various times between 1978 and September 5, 2002. (Rec. No. 1, Complaint ¶¶ 1, 10). The Plaintiffs assert that, in 1978, American Standard , Inc. ("ASI") entered into a collective bargaining agreement  (the "1978 CBA") with the United Steelworkers of America (the "Union") that specifically addressed "issues pertaining to hourly rate retirees." (Rec. No. 1, Complaint ¶ 5). Plaintiffs further assert that the 1978 CBA "contemplated" that the Paintsville employees would have the same medical and disability benefits as employees at ASI's Louisville plant. (Rec. No. 1, Complaint ¶¶ 6-7).  Plaintiffs assert that, under the 1978 CBA, employees did not have to contribute to the cost of any part of the ASI insurance plan, nor did disability retirees. (Rec. No. 1, Complaint ¶ 7).

Plaintiffs assert that an ASI employee with authority to bind ASI told each of them at the time he took disability that his health insurance premiums would not be increased after the Plaintiff's retirement until he reached age 65. (Rec. No. 1, Complaint ¶ 10). Each Plaintiff also asserts that, at

the time he retired, an ASI employee told him that the prohibition against raising his health premiums was "consistent with" the 1978 CBA. (Rec. No. 1, Complaint ¶¶ 11). Plaintiffs assert that many of them, and maybe all, signed documents upon their retirement stating that their health insurance premiums would not be increased until age 65. (Rec. No. 1, Complaint ¶ 15).

Plaintiffs assert that, by letter dated September 5, 2002, the ASI Plant Manager informed them that ASI and Local 7926 had entered into a new agreement on June 30, 2002, pursuant to which the Plaintiffs would have to pay health premiums at the same level as current ASI employees. (Rec. No. 1, Complaint ¶¶ 12, 13). Plaintiffs assert that they had never had to pay health premiums at the same level as the current employees before this letter. Plaintiffs assert that, before the September 5, 2002 letter, they paid varying health insurance premium rates ranging from $0 to $50 depending on the policy in effect at the time of their retirement. (Rec. No. 1, Complaint ¶¶ 9, 14). Plaintiffs assert that they must now pay 10% of the premium costs in the first year, 12% in the second year, and 15% in the third year. (Rec. No. 1, Complaint ¶ 15). Plaintiffs assert that this violates the 1978 CBA and the representations ASI representatives made to them at retirement. (Rec. No. 1, Complaint ¶ 16).

Plaintiffs filed their Complaint on September 5, 2003. (Rec. No. 1, Complaint). Plaintiffs assert claims against ASI under the Labor Management Relations Act, 29 U.S.C. § 185, *et seq* ("LMRA") and under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 ("ERISA"). In the alternative, Plaintiffs also assert a number of state law claims including breach of contract and breach of the covenant of good faith and fair dealing. Plaintiffs assert they are entitled to punitive damages as a result of their claim under LMRA and their claim for breach of the covenant of good faith and fair dealing.

2

On April 26, 2005 – over 1 ½ years after filing the Complaint – Plaintiffs moved for Preliminary Injunction asking the Court to restrain ASI from requiring the Plaintiffs to pay more for their health insurance than each Plaintiff was paying at the time that he retired. (Rec. No. 23).

    **A.    Plaintiff's Evidence that ASI agreed it would not Raise the Plaintiffs' Premiums until Age 65.**

    **1.    Statements from ASI Representatives.**

With their motion, as evidence that ASI agreed that it would not raise the Plaintiff's health care premiums until they reached age 65, Plaintiffs submit the statement of Jim Perry who worked at ASI's Paintsville plant for 25 years and was Human Resources Manager from 1998 to 2000. Perry states that he and other ASI representatives told disability retirees their premium would not change until they reached age 65. (Rec. No. 23, Motion for Prelim. Injunction, Ex. 1). He states that his actions reflected ASI's policy from the first disability retirement he ever processed and that ASI's Corporate Benefits Group never questioned this policy.

Perry also states that he possessed a document stating that ASI's Paintsville employees would have the same health care coverage as the employees at ASI's Louisville plant. He further states that a "representative of the Louisville plant" told him that its disability retirees paid nothing for their medical coverage.

Plaintiffs also submit a November 6, 1978 ASI inter-office memorandum from T.L. Myers to D.D. Porter regarding "Paintsville Negotiations Summary Report of Settlement." (Rec. No. 23, Motion for Prelim. Injunction, Ex. 2). This memorandum appears to discuss a cost of living increase and vacation adjustment for current employees. As evidence of their health insurance benefits, Plaintiffs cite to a portion of the memorandum stating:

>In 1975 a precedent was established whereby the Paintsville Plant received the same negotiated wage increases that were granted in Louisville. This pattern was even more established with the conclusion of the 1978 negotiations as Paintsville was granted an identical settlement to that of Louisville and also came closer to complete parity to Dearborn and Louisville in Pension and Insurance issues. In the future, the Company can expect a total parity in Pension and Insurance benefits at Paintsville with Dearborn and Louisville. . . .

Plaintiffs also submit a letter dated July 1, 1989 from ASI's Vice President for Human Resources, Adrian B. Deshotel in which Deshotel states "will document the Company's position with respect to the continuation of retiree insurance benefits." (Rec. No. 23, Motion for Prelim. Injunction, Ex. 3). Deshotel's letter further states that ASI "will not modify or terminate retiree insurance benefits, as currently provided, for employees who have already retired or who retire during the term of the Collective Bargaining Agreement effective July 1, 1989 through June 20, 1992. It is understood that this commitment does not terminate with the expiration of the Insurance Agreement."

Plaintiffs also submit the affidavit of Bill Hall who was ASI's Human Resources Manager from 1972 to 2001. (Rec. No. 23, Motion for Prelim. Injunction, Ex. 4). Like Perry, Hall asserts that disability retirees "were told" their health insurance benefits would not change until age 65 and that he personally passed this information along to at least one retiree. Hall also testifies that, after the 1978 collective bargaining session, Deshotel gave him a document outlining the agreements reached. Hall further states that the agreement reached provided that disability retirees would receive the same health insurance benefits they had at retirement until age 65. Hall also states that this document from Deshotel was removed from the location where he put it when he worked at ASI.

    2.    **Statements of Disability Retirees.**

Plaintiffs also submit the affidavit of certain former ASI disability retirees. Gary Crum

4

testifies that, when he took disability retirement, Hall told him that he would have health and dental insurance coverage until age 65 at no cost since he was currently paying nothing for this insurance and ASI paid for it. (Rec. No. 23, Motion for Prelim. Injunction, Ex. 5). Crum states that Hall told him that he received these disability retiree health benefits as a result of the 1978 collective bargaining agreement. Crum also states that, at the time of his retirement, he signed documents indicating that he would continue to receive health and dental insurance at no charge to him until age 65 but that the document is no longer in his personnel file.

Crum states that he now has to pay $124.15 per month for health insurance through ASI and that his pension is only $300 per month. Crum states that his is "afraid" that if he is "continued to be forced to pay increasing health insurance premiums," he will have to choose between medical coverage and other of life's necessities.

Another ASI disability retiree, Billy Hicks, states that, at the time he retired, ASI employee Ron Grosl told him that he would continue to receive the same health insurance coverage at zero cost to him – as he had received at retirement – until age 65. (Rec. No. 23, Motion for Prelim. Injunction, Ex. 6). Hicks states that he signed many documents at retirement but that many of those documents are not in the personnel file ASI provided to his attorneys. He states that, as a result of the increase in health insurance premiums, he is under great emotional and financial distress and that he is "constantly worried" that he "will be placed in the position of having to choose between health coverage and other of life's necessities."

Disability retiree Linda Gayle Arms states that ASI employee Ron Grosl also processed her disability application and that he told her she would have the same health and dental insurance coverage that she had at retirement until she reached age 65. (Rec. No. 23, Motion for Prelim.

5

Injunction, Ex. 7). She states, at the time she took retirement, she signed many documents, at least one of which contained this agreement regarding health and dental insurance but that the document was not in the personnel file ASI produced to her attorneys.

Disability retiree Ballard Ray Prater states that he was the President of Local 7926 from 1977 to 1981 and that the Union was responsible for negotiating on behalf of ASI's Paintsville plant's union employees. (Rec. No. 23, Motion for Prelim. Injunction, Ex. 8). He states that he was personally involved in the 1978 collective bargaining and that "it was agreed by all parties that the Paintsville disability retirees were to receive continued health insurance coverage until each person reached the age of 65, at whatever cost they were paying at the time they took disability retirement. This agreement could not be changed by subsequent collective bargaining." Prater states that, after the agreement was reached, he personally saw a document reflecting this agreement that was signed by ASI and Union representatives. Prater states he possessed this document while he was Union President and kept it at local headquarters.

### 3.     November 3, 1978 Agreement and September 5, 2002 Letter.

Plaintiffs submit an agreement dated November 3, 1978 which states it was made and entered into at Paintsville, Kentucky by and between ASI "exclusively with respect to the Paintsville Plant" and the Union. (Rec. No. 23, Exhibit 1, Motion for Prelim. Injunction, Ex. 9). This written agreement states, with regard to Pensions, "Group Insurance and Pension Benefits for the Pikeville Plant will be those agreed to on July 1, 1978." (Rec. No. 23, Exhibit 1, Motion for Prelim. Injunction, Ex. 9, §§ 31.01, 32.01). Finally, the Plaintiffs submit the September 5, 2002 letter from ASI Plant Manager Mike Guthrie stating:

> American Standard and the Steelworkers Union, Local 7926, negotiated a new

6

>contract on June 30, 2002. This will confirm that there were no negotiations at that time relating to prior permanently disabled retirees. Therefore, all prior permanently disabled retirees will continue to receive access to health insurance, according to past practice, with the same medical options offered to current employees and at the current employee cost. No exceptions were requested or granted during negotiations.

(Rec. No. 23, Motion for Prelim. Injunction, Ex. 10).

### II. ANALYSIS.

When reviewing motions for preliminary injunction, the court must assess and balance the following four factors:

1. The movant's likelihood of success on the merits;

2. The likelihood of the movant suffering irreparable harm;

3. Whether the injunction will substantially harm others; and

4. The effect of the injunction on the public interest.

*Overstreet v. Lexington-Fayette Urban-County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *County SEC Agency v. Ohio DOC*, 296 F.3d 477, 485 (6th Cir. 2002).

After carefully considering the above-recited facts, the Court does not believe that the extraordinary remedy of a preliminary injunction is warranted in this case.

The issue on the merits in this case is whether ASI and the Union agreed in 1978 that the health insurance premiums of ASI disability retirees would not be raised until the retiree reached age 65. The resolution of that issue depends, of course, on what the parties to the agreement intended. In discerning the parties' intent, "the court should first look to the explicit language of the collective bargaining agreement for clear manifestations of intent." *U.A.W. v. Yard-Man, Inc.*, 716 F.2d 1476, 1479 (6th Cir. 1983).

Thus, an initial problem with determining which party is likely to succeed on the merits in

7

this case is that no party has produced a relevant written agreement for the Court to analyze. Whether this is because, as ASI appears to argue, no such agreement was ever made, or, as the Plaintiffs argue, because the written agreement and/or agreements have been destroyed, is not relevant for purposes of this motion.[1] For purposes of this motion, the Court simply notes that preliminarily determining which party is likely to succeed on the merits of a case like this is made difficult without a written agreement. The lack of a written agreement distinguishes this case from *Yard-Man, Inc., supra* and from every other case the Court has reviewed on this issue.

If discovery in this case should produce a written agreement and the Court should determine that the parties clearly intended for the disability retirees to continue to receive health insurance at the same rates until age 65, then this matter may be resolved as a matter of law. If, however, the Court should determine that ASI unambiguously reserved the right to unilaterally terminate or modify the retirees' health insurance benefits, there would likely be issues of estoppel presented by the promises of ASI representatives to disability retirees upon their retirements. Obviously, neither party has addressed these issues as there is no written agreement yet.

If the Court should determine that the relevant written agreement is ambiguous with regards to retiree health insurance benefits, then the Plaintiffs have produced substantial extrinsic evidence regarding the intent of the parties – including the parties' past practice – that the Court would have to consider in determining the parties' intent. Before determining the relevance of the parties' past practice, however, the Court must determine if there was, indeed, any agreement regarding the retirees' health insurance benefits and whether that agreement is ambiguous or silent on the retirees'

---

[1] The Court presumes that the 1978 CBA that the Plaintiffs assert provided for their health insurance benefits is the July 1, 1978 agreement referenced in Sections 31.01 and 32.01 of the November 3, 1978 agreement attached as Exhibit 9 to the Plaintiffs' Motion for Preliminary Injunction, although neither party has made that clear.

8

health insurance benefits.

If discovery should indicate there was no 1978 written agreement between the Union and ASI on disability retirees' health benefits, then, it appears, that the next issue on the merits of this case may be whether there was any sort of oral agreement between the Union and ASI on this issue. It also appears that there may be an issue as to whether ASI itself made oral promises to its disability retirees. Assuming that such oral promises were made – and the Plaintiffs have certainly produced evidence indicating that ASI at least orally promised either the Union or its disability retirees that the retirees would receive health insurance at the same rates until age 65 and that this policy was, in fact, carried out – the next issue is whether such an oral agreement is binding. Neither party has fully briefed this issue.

In sum, resolution of whether there was any agreement regarding the ASI disability retirees' health insurance benefits will require further pleading and discovery without which the Court is unable to say which party is likely to win on the merits. Further, resolution of this case involves many issues that neither party has even addressed in the pleadings on the Motion for Preliminary Injunction. The Court also notes that the parties appear to have been actively engaged in substantial discovery and pursuant to the agreement of the parties, the parties will soon be filing dispositive motions. (Rec. No. 36, Joint Mot. to Extend Certain Deadlines). At that time, the Court will have a much more complete record from which it can determine if either party is entitled to judgment as a matter of law.

As to whether the Plaintiffs will suffer irreparable harm if a preliminary injunction is not issued, the Court notes that Plaintiffs waited a substantial amount of time after receiving notice of the raise in health care premiums to move for preliminary injunctive relief. Plaintiffs argue that they

9

were delayed because the parties were involved in discovery and settlement negotiations. Plaintiffs also argue that they were attempting to obtain the affidavit of Union President Prater. The Plaintiffs, however, did not move for this extraordinary relief until more than 1 ½ years after filing the Complaint and more than 2 ½ years after they received notice of the raise in health insurance premiums. This lengthy delay in seeking preliminary injunctive relief weighs against a finding that Plaintiffs will be irreparably harmed if such relief is not granted.

The Court also notes that, if Plaintiffs succeed on the merits, they can be made whole by money damages. Two disability retirees have submitted affidavits stating that they are worried they may eventually have to choose between health insurance and life's necessities. (Rec. No. 23, Motion for Prelim. Injunction, Ex. 5, Crum Aff. ¶ 17; Ex. 6, Hicks Aff. ¶ 10). There is no evidence, however, that any retiree is in imminent danger of losing health insurance because of the raise in premiums.

As to whether the injunction will substantially harm others and to whether the public interest would be served by the injunction, the Court does not believe that ASI would be substantially harmed by the injunction especially given the bond requirement of Fed. R. Civ. P. 65(c). Nevertheless, the Court does not believe that the public interest would be served by the granting of an injunction in a case such as this where there are critical factual disputes that cannot be resolved without substantial discovery.

Accordingly, for all the above reasons, the Plaintiff's Motion for Preliminary Injunction (Rec. No. 23) is hereby DENIED.

This the 2nd day of September, 2005.



**Signed By:**
*Karen K. Caldwell*
**United States District Judge**